**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

THOMAS G. TRIPP

       Plaintiff,

vs.

MARY M. TRIPP FAMILY TRUST,

MARY M. TRIPP, Individually And As Trustmaker
Of The Mary M. Tripp Family Trust

JANET L. BACKUS, Individually And As Trustee
Of The Mary M. Tripp Family Trust

JEAN M. IBBOTSON, Individually And As Trustee
Of The Mary M. Tripp Family Trust

       Defendants.

**COMPLAINT**

The Plaintiff Thomas G. Tripp, by and through counsel, Craig E. Wagner/Craig Wagner Law Firm and John Henry Schlie, for his Complaint against the Defendants, Mary M. Tripp Family Trust, Mary M. Tripp, Janet L. Backus, and Jean M. Ibbotson, states as follows:

**PARTIES**

1. Plaintiff Thomas G. Tripp (Tom), a resident of Parker, Colorado, is the only son and surviving child of Glenn A. Tripp (Glenn), who resided in Jefferson County, Colorado until his death on April 7, 2019 at age 93, as a result of end stage Alzheimer's disease. Prior to Glenn's death Tom was appointed by a court order from the Jefferson County, Colorado District/Probate

1

Court dated September 29, 2018 as the Conservator for his father Glenn, Case Number 2018PR30704.  Since Glenn's death an estate case was opened in said Jefferson County court, Case Number 2019PR30367.  Tom Tripp is an heir of Glenn Tripp and a named beneficiary in Glenn's Will.

2. Defendant the Mary M. Tripp Family Trust (Trust) is an irrevocable trust established by the individual Defendants named above on September 16, 2015.  While said trust was established in Colorado, counsel for the trust has represented that the situs of the trust is now in Iowa.

3. Defendant Mary M. Tripp (Mary) is the second wife of Glenn Tripp, Plaintiff's deceased father; Mary never had children.  Mary previously was a resident of Jefferson County Colorado, but now she has moved and resides in Iowa.

4. Defendant Janet L. Backus (Jan) is a niece of Mary and she resides in Iowa.  Pertinent to this Complaint Ms. Backus was not related to Glenn Tripp and was never a named beneficiary in any of Glenn Tripp's estate plans.

5. Defendant Jean M. Ibbotson (Jean) is a niece of Mary and she resides in Iowa. Pertinent to this Complaint Ms. Ibbotson was not related to Glenn Tripp and was never a named beneficiary in any of Glenn Tripp's estate plans.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) in that most of the events giving rise to the claims herein occurred in this District.

## GENERAL ALLEGATIONS

8. Glenn Tripp had two children from his original marriage -- his son Tom, the Plaintiff herein, and a daughter Gloria Tripp.  Gloria passed away last year after Glenn died -- Gloria died on July 9, 2019.

9. Glenn Tripp sustained an internal head injury from a fall in early 2014.  This injury to Glenn's brain severely aggravated what had previously been described as normal dementia or senility issues of someone almost 90 years old.  But on <u>April 21, 2014</u> Glenn was diagnosed by a doctor as no longer having sufficient mental capacity to handle his property and affairs.  It was indicated then that Glenn had Alzheimer's disease.

10. After Tom was appointed Conservator for Glenn in September 2018, Tom discovered that on <u>September 16, 2015</u>, Mary and her nieces Jan and Jean through a Colorado attorney had established an irrevocable trust -- the Defendant *Mary M. Tripp Family Trust*.  Pertinent in light of the execution and terms of the Trust as described hereafter, that attorney has represented that he never met with or even spoke with Glenn Tripp.

11. This Trust was established well over a year after Glenn had been determined to be incompetent, and Glenn would not and could not have understood what Mary and her nieces were doing at this time.  While Glenn was listed as a "Trustmaker" along with Mary, Glenn did not see or sign this Trust.  Mary signed her name and signed Glenn's name "by Mary M. Tripp POA" (Power of Attorney), but Mary's power of attorney for Glenn, dated in 2007, did not authorize her to establish such an irrevocable trust by or for Glenn.  More importantly, said Trust was not in Glenn's best interests, but rather was the first part of a **scheme** by Mary, Jan and Jean to nullify Glenn's estate plan, effectively cancel the substantial devises in Glenn Tripp's last Will to his natural children Tom and Gloria, and seize Glenn's substantial assets for themselves.  In the second part of said **scheme** Defendants <u>**Mary, Jan and Jean transferred almost all of Glenn's assets to the Defendant Trust**</u>.

12. The Trust provisions begin by stating:

**Article One Establishing My Trust**

*The date of this Irrevocable Trust Agreement is September 16, 2015. The parties to the agreement are Glenn A. Tripp and Mary M. Tripp (the "Trustmakers") and Janet Backus and Jean Ibbotson (my "Initial Trustees").*

**Section 1.01 Identifying My Trust**

*My trust is called the "Mary M. Tripp Family Trust." However, the following format should be used for taking title to assets: "Janet Backus or Jean Ibbotson, Trustees of the Mary M. Tripp Family Trust dated September 16, 2015."*

13. As noted above, this Trust was supposedly made or created by both Glenn and Mary. The following sections of the Trust, however, make it clear that Glenn was not a beneficiary of the Trust:

**Section 1.04 No Distribution of Income or Principal**

*My Trustee <u>shall have no right, power, privilege or authority to invade or distribute income or principal of the trust to or for my benefit</u>.*

**Section 1.05 Statement of Our Intent**

*Glenn A. Tripp and Mary M. Tripp are creating this trust as part of my estate plan to ensure efficient management, administration and protection <u>of the trust assets for my beneficiaries</u>. It is my express intent that <u>the principal and income of this trust will not be available to me for any purpose, including Medicaid</u>.* [emphasis supplied]

14. Concerning Glenn Tripp's "beneficiaries", upon Mary's subsequent death both Tom and Gloria Tripp were the major beneficiaries pursuant to their father Glenn's last Will, dated August 31, 2005. In direct contradiction of those beneficiary designations, the Defendants Mary, Jan and Jean inserted the following beneficiaries section in the Defendant Trust:

### Section 1.06 My Beneficiaries

*The lifetime (income) beneficiaries of this trust are the individual* [sic] *listed below, or any other individuals whom the trustee adds in good faith at a later time, <u>with the advice and consent of Mary M. Tripp</u>:* [emphasis supplied]

**Name:**

*Janet Backus*
*Jean Ibbotson*

*The ultimate beneficiaries of my trust are:*

**Name:**

*Janet Backus*
*Jean Ibbotson*
*Julie Parsons*
*Jesse D. Patrick*

*Because Gloria Tripp is no longer involved with the family and Thomas Tripp has already received a significant amount of financial assistance from my* [sic] *and my husband, Glenn A. Tripp, <u>neither Gloria Tripp or Thomas Tripp are entitled to receive any sort of distribution from this trust, and they are not beneficiaries of this trust in any capacity</u>.*     [emphasis supplied]

As addressed subsequently herein, the above statement regarding Gloria and Tom Tripp was untrue, and more importantly Glenn Tripp had never indicated a desire to remove Tom or Gloria as beneficiaries in his Will or of his estate.  This language was inserted by Mary, Jan and Jean in a disingenuous attempt to justify their seizure and control of the assets owned by Glenn, and to exclude Tom and Gloria as eventual substantial beneficiaries of Glenn's assets.

    15.  The Defendants Mary, Jan and Jean, personally and by their Colorado counsel, have subsequently represented to Tom Tripp and the Jefferson County court that this Trust was a Medicaid planning trust.  This representation by the counsel for Jan and

5

Jean was contained in motions filed by them in the Conservatorship case on January 17, 2019.  But transferring approximately three million dollars of assets, assets which were primarily originally owned by or earned by Glenn, into the Mary family trust, with no retained control by Glenn, at a time when Glenn's Alzheimer's disease had advanced to the point where Glenn had no comprehension of what was happening, and when Glenn's remaining life expectancy was clearly less than five years [the Medicaid look-back period] -- this Trust was clearly not a legitimate Medicaid planning trust and clearly not in Glenn's best interests.  See the *Affidavit* from M. Kent Olsen, Esq. a Medicaid planning expert, attached and filed herewith as *Exhibit A*.  It is also pertinent to note that the private care facility where Glenn was residing, *Gardens on Quail Memory Care Center*, and where he resided until his death, did not accept Medicaid patients.

  16. The Defendants Mary, Jan and Jean also attempted to justify the Trust as a method to enable Glenn to be eligible for VA benefits.  It has been confirmed that the Defendants had submitted a VA application for Glenn through a Kansas Attorney, and said application was then denied based upon excessive income shown on Glenn's tax returns.   It has also been confirmed with local counsel specializing in VA benefits that considering the true amount of Glenn's assets, an attempt to qualify him for VA benefits would be considered a "scam".

  17. As stated in the Petition for an accounting filed on December 5, 2018 by Tom Tripp as Conservator for Glenn:

> 7. *It is now apparent that Glenn Tripp's current spouse Mary Tripp, and/or her respondent nieces Janet Backus and Jean Ibbotson, have improperly transferred assets away from Glenn Tripp, and the current known evidence shows clear exploitation of said protected person herein.*

The Defendants' statements and state court pleadings claiming that the Trust was created for Medicaid purposes, or for VA benefit purposes, were untrue, invalid and a **sham**.  [The Defendants Mary, Jan and Jean did, however, appropriately name the Trust as the

6

*Mary M. Tripp Family Trust*, because it certainly was not a trust for the benefit of Glenn or Glenn's family.]

18. Before the marriage of Glenn and Mary, they signed an Antenuptial Agreement on July 28, 1975. Defendant Mary has provided a copy of said agreement along with a list of her then assets – which totaled $107,774.02. Mary has not provided the list of assets then owned by Glenn. At that time Glenn owned a *Snap-on* tools and equipment franchise, had worked for many years as a *Snap-on* dealer and had invested much of his money. Upon information and belief Glenn's assets at the time of the antenuptial agreement totaled in the hundreds of thousands of dollars.

19. After their marriage Glenn continued to work as a *Snap-on* dealer, and continued to invest part of his money, for many more years. After their marriage Mary worked as a homemaker.

20. Before outlining herein what is known about Glenn's and Mary's assets in the time frame before and after when Glenn was determined incompetent in 2014 and when the Defendant Trust was established in 2015, the following representations made by Defendant Jan regarding Glenn's assets should be noted:

    a) Jan initially sought appointment as Glenn's Conservator; her petition was filed July 11, 2018. Jan described and verified under penalty of perjury that Glenn's <u>only</u> asset was (ironically) "LOAN TO TOM" for $50,000.00. During the Great Recession of 2007 to 2009, when Glenn learned that Tom was not going to be able to sell a property Tom owned for as much as was owed against the property, his father Glenn insisted on giving Tom $50,000.00 so that the property sale could be closed and the debt service required on that property could be stopped. Glenn told Tom that he never expected Tom to repay him, and initially Glenn did not request any written documentation. But Mary insisted that a note be prepared in case Tom died before Glenn. Tom was not then married, and Mary said she did not want to see any benefit, from money given to Tom, end up with Tom's mother Nancy, Glenn's first wife -- whom Mary hated. It should be pointed out that the concerned note document had no due date

7

and an interest rate of "0% per year".  Under Colorado law the note was thus in effect a demand note, and when no demand or effort to collect said note ever occurred, that note was uncollectible six years after its date of December 10, 2009 pursuant to C.R.S. § 13-80-103.5.  After December 10, 2015, before Glenn died and since his death last year, no actions for repayment could have validly been filed, and none have been filed -- just as Glenn intended.

      b)      In the Visitor's Report filed in Glenn's Conservatorship case initially filed by Jan, the visitor Mary J. Maresh referenced Defendant Backus's responses from her interview of Jan, including:

1. Occupation:  Retired
2. Why was this petition initiated?
   **We need to apply for Medicaid**
3. Where has the respondent resided during the last three months?
   At The Gardens on Quail
4. Who, if anyone, has been handling the respondent's financial affairs during this period?
   **There is nothing to manage**

As set forth earlier herein, the alleged need to apply for Medicaid for Glenn was a **sham**.  Before adding to Defendant Jan's statements that Glenn had little or no assets, **"nothing to manage"**, it should be noted that Jan is now stating that the primary reason she filed her petition to be appointed Glenn's conservator was to deposit long-term care insurance checks in her possession payable to Glenn.  This reason was not listed or included by Jan in her Conservatorship petition or in her responses to the Visitor's questions.  And there could have been no legitimate reason why Mary, or Jan, or Jean, could not have requested that the concerned insurer cancel and reissue the checks that were in Jan's possession to the *Gardens On Quail* directly.

8

c)  In addition to the Defendant Jan's statements as noted above, in a Response filed in the Conservatorship case on November 30, 2018, Defendant Jan makes the incredible assertion that:

> **Ms. Backus initially petitioned the Court to become Conservator in part because Glenn Tripp no longer had an estate to speak of.  Glenn Tripp's personal resources had depleted;**

d)  Further incredible assertions and admissions by the Defendant Jan include the following statements in her Response filed in the Conservatorship case on December 14, 2018:

• In 2015, an irrevocable trust was established by Glenn and Mary Tripp, entitled the "Mary M. Tripp Family Trust" (herein after, the "Trust") **to take control of their assets, both joint and individual, and to set up their estate for Medicaid planning.**

• Glenn Tripp, the protected person, is neither a trustee, nor a beneficiary of the Trust, and the Trust is not revocable by either settlor; **therefore, none of the assets within the Trust are part of Glenn's Conservatorship Estate.**

• **Glenn Tripp's assets, both individual and joint with his wife Mary, were collected and put in the Trust in 2015.  Glenn Tripp was deliberately neither a trustee, nor a beneficiary of the Trust, with the goal being to plan for Medicaid in the future.  As a result, none of the assets in the Trust are part of Glenn's conservatorship estate.**

21. Because the Defendants have refused repeated requests for a full accounting of the assets transferred into the Mary family trust, the Defendant Trust, the full extent of the assets owned by Glenn Tripp at the time of said transfers is unknown.  Again, Glenn Tripp's determination of incompetency was on <u>April 21, 2014;</u> the Trust was established <u>September 16, 2015</u>.

22. Plaintiff Tom Tripp has great concern about what has happened relative to his father Glenn's assets/estate.  An "Asset Review 06/28/2016" provided by a financial

advisor, Dave Anthony, who is now believed to have been acting as a financial advisor to all the Defendants, supposedly includes all of Glenn's and Mary's assets as of that date. The following is lifted exactly from his review:

**Assets**

| | | |
|---|---|---|
| Mary | Checking | $30,000 |
| Trust | Checking | $300,000 |
| Trust | Guaranteed account | $1,500,000 |
| Trust | Symetra-Mary | $177,000 |
| Trust | Symetra -Glen | $168,000 |
| Trust | Oil Drill Fund | $260,000 |
| Trust | Oil Income Fund | $140,000 |
| Mary | House | $402,000 |
| **Total** | | **$2,977,000** |

It is pertinent to note that Dave Anthony acknowledged in an email on November 14, 2018 during the Conservatorship, *"Also, how is Tom supposed to pay for Glenn once the long term care* [insurance] *monies run out?  He can't access any of the trust monies …"*.

23. Even with all the assts held by the Defendants as listed in the above paragraph, they failed to act or acted improperly such that Glenn's concerned medical insurance was cancelled in June of 2017.

24. And in the related Glenn Tripp state court estate case, Defendant Mary Tripp initially petitioned for the admission of a modified will with handwritten revisions supposedly done and initialed by Glenn on the same date of his last Will.  This modified will added provisions contrary to the interests of Tom Tripp and his sister Gloria.  It has been proven that Mary misrepresented said alleged modified will to the Jefferson County court -- said handwritten revisions were not made on the same date as the original

unaltered Will of Glenn Tripp, and Glenn Tripp's supposed initials were forged by Defendant Mary Tripp.

## FIRST CLAIM FOR RELIEF
### (Tortious Inference With Inheritance Rights)

25. Plaintiff Tom Tripp incorporates all paragraphs above and below.

26. Tom (and his sister Gloria) had a valid expectancy and/or right to receive or inherit from his father Glenn his/her share of Glenn's assets/estate pursuant to Glenn's Will.

27. The Defendants Mary, Jan and Jean intentionally interfered with Tom's expectancy and/or right to receive his share of Glenn's estate, and wrongfully transferred assets to the sham Defendant Trust.

28. The creation or establishment of the Trust was clearly not in Glenn Tripp's best interests, and was part of the scheme by Defendants Mary, Jan and Jean to obtain control of Glenn's assets and deprive Tom and Gloria Tripp of the eventual benefit of said assets.

29. The terms of the Trust, including its named trustees and beneficiaries, and certain statements in the Trust, were directly contrary to Glenn's wishes and falsehoods.

30. The actions of the Defendants Mary, Jan and Jean in creating this Trust and then transferring almost all of Glenn's assets to said Trust were improper, unlawful and outrageous.

31. Absent said intentional tortious conduct by Mary, Jan and Jean, Tom would have received or inherited in due course his share of his father's estate assets.

32. Plaintiff Tom has sustained damages as a result of Mary's, Jan's and Jean's actions.

## SECOND CLAIM FOR RELIEF
### (Conversion)

33. Plaintiff Tom Tripp incorporates all paragraphs above and below.

11

34. The Defendants' actions are inconsistent with Plaintiff's interests in his father's estate assets. Said actions are in direct conflict with Plaintiff's future interest in said estate's assets.

35. The Defendants have knowingly exercised control over certain of Glenn's assets with the intent to retain said assets for themselves and to permanently deprive Plaintiff of the use and benefit of his interest in his father's estate assets.

36. Said actions by the Defendants have caused damages to the Plaintiff and said actions have been in bad faith and attended by circumstances of fraud, dishonesty, malice or willful and wanton conduct.

## THIRD CLAIM FOR RELIEF
### (Civil Conspiracy To Commit Tortious Interference With Inheritance Rights And Conversion)

37. Plaintiff Tom Tripp incorporates all paragraphs above and below.

38. Defendants had a meeting of the minds and knowingly and willfully conspired and agreed to engage in their scheme as generally alleged earlier in this Complaint and as complained of above.

39. Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including but not limited to the wrongful acts alleged in this Complaint in detail and as complained of above.

40. As a direct and proximate result of Defendants' said conspiracy, Plaintiff suffered damages in an amount to be determined at trial.

41. Defendants are jointly and severally liable for Plaintiff's losses.

## FOURTH CLAIM FOR RELIEF
### (Civil Theft)

42. Plaintiff Tom Tripp incorporates all paragraphs above and below.

43. The Defendants' actions constitute theft of property that is rightfully Glenn's estate property and/or Plaintiff's property; said actions have violated Colorado's Civil Theft Statute, C.R.S. § 18-4-405.

44. Pursuant to the Civil Theft Statute the Defendants are liable to the Plaintiff for treble damages, costs and attorney fees.

## **FIFTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

45. Plaintiff Tom Tripp incorporates all paragraphs above and below.

46. Plaintiff has a future ownership interest in his father's estate assets.

47. The Defendants transferred assets and/or are in possession of assets such that they be unjustly enriched at the expense of Glenn's estate and/or the Plaintiff -- it would be inequitable -- if the Defendants are not required to recognize Plaintiff's rights in his father's estate assets.

48. It would be unjust under said circumstances for the Defendants to retain said assets without returning them to or without reimbursement to the Plaintiff.

49. All Defendants are liable to the Plaintiff for the benefits they obtained in order to prevent unjust enrichment.

WHEREFORE Plaintiff prays that this Honorable Court void the sham Defendant Trust and enter a Judgment in favor of the Plaintiff and against Defendants, including appropriate damages in an amount to be determined at trial, inclusive of allowable exemplary and treble damages, plus his costs and any allowable attorney fees herein, plus appropriate pre-trial and post-trial interest on said damages.

Respectfully submitted this 10th day of July, 2020.

| | |
|---|---|
| */s/ Craig E. Wagner* | s/ John Henry Schlie |
| Craig E. Wagner | John Henry Schlie |
| **CRAIG WAGNER LAW FIRM** | **JOHN HENRY SCHLIE, P.C.** |
| *BELLEVIEW TOWER* | 5105 DTC Parkway, Suite 450 |
| 7887 E. Belleview Avenue, Suite 1100 | Greenwood Village, CO 80111 |
| Denver, CO 80111-6097 | Telephone: (303) 830-1616 |
| Phone Number: (303) 220-8004 | Facsimile: (303) 860-1297 |
| Email: craig@craigwagnerlawfirm.com | E-mail: johnhenry@schlielawfirm.com |

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
Thomas G. Tripp
11351 Random Valley Circle
Parker, CO 80134